1
2
3
4
5
6
7

8
9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

10

SYLVESTER CLARK,

11
12                                        Petitioner,        Case No. C07-00607RBL

13                      v.                                   ORDER

14   RICHARD SUBIA, Warden,

15                                        Respondent.

16
17
18

19
20        This matter comes before the Court on Sylvester Clark's petition for a writ of habeas corpus.  For the

21   following reasons, the Petition is DENIED.

22                                        **I. BACKGROUND**

23        This statement of facts is taken from the unpublished opinion of the California Court of Appeal,

24   Third District.[1]

25
26        Defendant moved to Sacramento in 1996 and lived with his brother, Ozell Clark, and
          Ozell's wife and children. In early 1997, defendant, a mechanic, was introduced to a woman,

27
28
_____
     [1]In a federal habeas proceeding, state court factual findings are presumed to be correct unless rebutted by clear and
convincing evidence.  28 U.S.C. § 2254(e)(1); *Jeffers v. Wood*, 114 F.3d 1484, 1499-1500 (9th Cir. 1997).

R.C., who needed her vehicle repaired. The two became good friends.

At the time she met defendant, R.C. was the mother of four-year-old K.C., who suffered from a learning disability. R.C. attended school during the day and worked as a nurse's assistant in the evening, so she often needed a babysitter for her son. Generally, R.C.'s brother, Lamont, and his fiancée, Bridget, would watch K.C. However, beginning in 1997, defendant babysat K.C., both at R.C.'s apartment and Ozell's home. This continued until approximately 1999 when R.C. met Vincent, whom she later married. R .C. estimated that defendant babysat K.C. three to four times at her home and five times at Ozell's home. However, defendant testified he babysat K.C. "way more than five times" at Ozell's house.

In April 2002, R.C. and K.C. were in the car when K.C. suddenly disclosed defendant had sexually abused him. K.C. told his mother that defendant had "put his penis in his rectum." Following K.C.'s disclosure, R.C. called the police to file a report. She then took K.C. to his physician, Dr. Dennis Stobie. R.C. also took K.C. to the Multi-Disciplinary Interview Center (MDIC), where K.C. was interviewed by Kim Berardi regarding his allegations against defendant. The MDIC interview was recorded by Detective Vonda Walker.

Both R.C. and K.C., who was 10 years old at the time of trial, testified against defendant. R.C., who testified before K.C., recited how she and defendant met, where she lived with K.C., and what K.C. told her about the allegations. K.C. testified that defendant put his penis in his anus. K.C. both explained and demonstrated how defendant sexually abused him. K.C. said the abuse occurred twice at Ozell Clark's home, both times on the living room floor. K.C. testified he tried to get away from defendant, but defendant "scooted" him back to the floor. According to K.C., defendant told him "not to tell anyone." K.C. also described two more incidents of sexual abuse that occurred at R.C.'s apartment in which defendant sexually abused him. K.C. was not asked any questions about his statements to the police, to the MDIC interviewer, or to Dr. Stobie. However, K.C. was asked about disclosing the abuse to his mother. After K.C. testified, the prosecution called three more witnesses: Officer Erik Peterson, who responded to the police call by R.C.; Detective Walker, who observed and recorded the MDIC interview; and Dr. Stobie, who examined K.C.

Officer Peterson, a patrol officer, testified that on April 5, 2002, he responded to R.C.'s home to take a sex crime report. Officer Peterson usually emphasizes to children the importance of telling the truth, though he was unable to recall specifically if he explained it to K.C. K.C. then identified himself as a sexual assault victim, and identified his perpetrator as "Sylvester," his mother's friend. K.C. told Officer Peterson the abuse occurred when he was five, six, and seven years old and that it occurred ten times. K.C. explained that defendant put his private parts in his anus. K .C. explained to Officer Peterson that it hurt, he was scared, and he thought the incidents were disgusting. After Officer Peterson took statements from K.C. and R.C., he prepared a report and submitted the report to his sergeant.

Officer Walker, an investigative detective for the sexual assault child abuse unit of the Sacramento Police Department, testified regarding K.C.'s case. As part of her duties, Officer Walker recorded both the audio and video of the MDIC interview. The MDIC interview tape was also played for the jury.

The MDIC interview was conducted on April 26, 2002, by Kim Berardi. Berardi asked K.C. a series of questions about his background, such as what grade he was in. When questioned whether he was told what to say in the interview, K.C. stated that defendant told him not to tell anybody about the abuse. K.C. continued to describe the abuse that occurred when he was five, six and seven years old. K.C. did not know how many times the abuse occurred. But K.C. was able to describe several of the incidents. K.C. explained that he had not come forward before because he had "just remembered," and that when he was five years old, he was not able to speak.

Dr. Stobie, a general pediatrician at Kaiser, met with K.C. on April 16, 2002. R.C. recited to Dr. Stobie the history of K.C.'s complaint, and Dr. Stobie noted it in K.C.'s medical chart. The history included that K.C. had told his mother that he had been sexually abused by a former babysitter from the ages of five to seven. R.C. further stated that K.C. was told not to tell, but Dr. Stobie did not record who told him not to tell. Dr. Stobie performed a physical examination of K.C. and found no signs of abuse which, according to Dr. Stobie, was not inconsistent with K.C.'s allegations given the lapse of time between the abuse and the medical examination. As required, Dr. Stobie filled out a sexual abuse form, in which he recited in the summation that K.C. stated defendant "put his private parts in my bottom."

After a jury trial, Petitioner was convicted on May 9, 2003 of one count of sodomy by force or fear and three counts of lewd and lascivious acts with a minor under the age of fourteen.  On July 25, 2003, he was sentenced for fifteen years to life on count one, and a total of twelve consecutive years on counts two through four.  Petitioner appealed his convictions.  The California Court of Appeal, Third Appellate District, affirmed. The Supreme Court of California denied review.  Petitioner brought this 28 U.S.C. § 2254 petition for a writ of habeas corpus, raising five grounds for relief.

The Court has considered the record relevant to the grounds raised in the petition.  For the reasons discussed below, Petitioner's habeas petition is denied and the resulting action dismissed.

## II. Claims for Relief

Petitioner seeks relief upon five grounds. First, he asserts that his Sixth and Fourteenth Amendment rights to due process and to a "meaningful opportunity to present a defense" were denied when the trial court excluded his extrajudicial statement. Second, Petitioner asserts his Sixth Amendment right of confrontation was impaired when the victim's extrajudicial statement was introduced against Petitioner after the victim had testified and been released by the trial court.  Third, Petitioner asserts that his Sixth Amendment confrontation rights were violated when the trial court permitted an allegedly incompetent child witness to testify. Fourth, Petitioner claims that the trial court's jury instructions violated his Fourteenth Amendment right to have every fact necessary for conviction established beyond a reasonable doubt. Finally, Petitioner asserts that his Sixth Amendment right to trial by jury was violated when the trial court imposed an upper term of eight years for the principal term of Petitioner's determinate sentence.

## III. DISCUSSION

Federal courts review of habeas claims from those held in custody under a state court judgment are governed by 28 U.S.C. §§ 2254.  Accordingly, this Court may grant the petition "if the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1).  The Supreme Court holdings at the time of the state court decision will provide the "definitive source of clearly established federal law." *Van Tran v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000), *overruled in part on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003). A state-court decision is contrary to clearly established precedent if it "applies a rule that contradicts the governing law set forth in" a Supreme Court decision, or "confronts a set of facts that are materially indistinguishable" from such a decision and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

**A. First Claim- The Extrajudicial Statement**

On October 29, 2002, Detective Buck interrogated Petitioner.  Although there was in fact no DNA evidence of sexual assault, Detective Buck asked Petitioner why the victim's DNA would have been found inside K.C.'s buttocks.  Petitioner's responses to questioning suggest that he was surprised and outraged by the accusations, and befuddled as to why there would be DNA evidence.  When confronted with these allegations Petitioner responded, "man you can give me a lie detector test right now, dude." Throughout the interrogation, Petitioner consistently denied the allegations of abuse.

On direct examination at trial, Petitioner testified that he had no opportunity to commit the crimes because he was never alone with the victim.  Defense counsel did not elicit, and petitioner did not offer, any information about Detective Buck's questioning.

On cross-examination, the prosecutor elicited from Petitioner admissions that when Detective Buck interrogated him, he did not notify Detective Buck of his lack-of-opportunity defense.  Petitioner testified that the reason he failed to give Detective Buck the names of potentially exculpating witnesses or inform him he had never been alone with the victim was because Detective Buck never specifically asked him for this information. On redirect examination, defense counsel sought to introduce the portion of the interview in which Detective Buck falsely told Petitioner that there was DNA evidence.  The prosecutor objected. The trial court sustained the objection, told the jury to disregard the question, and ordered it stricken from the record. Outside the presence of the jury, the prosecutor argued that the defense was attempting to impeach Detective Buck's questioning technique by introducing evidence that the detective had used deceitful tactics when he made false claims that there was DNA evidence.  The prosecutor contended that

the DNA was not the same subject broached by the prosecutor on cross-examination within the meaning of California Evidence Code § 356. In response, defense counsel claimed that the broader context of the interrogation would rebut the impression that Petitioner had been evasive and uncooperative and was thus admissible under § 356.

The trial court ruled that the evidence was outside the scope of the cross-examination.  In the alternative, the court ruled that even if the evidence the defense sought to introduce was relevant in a "broad sense," the court would bar it under California Evidence Code § 352 on the ground that it was likely to confuse the jury.  When redirect examination resumed, defense counsel was allowed to elicit from Petitioner that he had told Detective Buck that another person was present at an outing where an impropriety with a different child allegedly occurred, and that he had denied hurting the victim.

The next day, defense counsel brought Detective Buck in to testify and renewed efforts to admit the portion of the interrogation in which Detective Buck told Petitioner (falsely) that DNA evidence had been discovered.  The trial court did not allow Detective Buck to testify, citing its earlier ruling, but agreed to strike Petitioner's cross-examination and redirect testimony about the interrogation.  The Court gave the following instructions to the jury before closing arguments and once again as part of jury instructions:

> Testimony of Sylvester Clark regarding his not supplying witness information to Detective Buck during his October 29, 2002 interview, has been stricken and is inadmissible for you to consider for any purpose.  Therefore, there is no evidence before the jury that Mr. Clark did not provide such information.

On appeal, Petitioner argued that the trial court's refusal to allow Petitioner to present evidence of the full context of his statement to the police constituted a denial of due process and the right to present a defense under the Fourteenth and Sixth Amendments.  The state court of appeal affirmed the trial court on evidentiary grounds, and held that because Petitioner did not raise a Sixth Amendment issue in the trial court, he had forfeited review of the issue under state procedural law, and the court disagreed with Petitioner's contention that an objection would have been futile.

Petitioner maintains his same objections on collateral attack.  Respondent reiterates the court of appeals' reasoning and contends that the court of appeals' reliance on a procedural rule operates as a procedural bar to federal habeas review of Petitioner's constitutional claims.  Petitioner claims that the state procedural grounds do not preclude federal review because the California contemporaneous objection

rule does not apply when the constitutional issue raised for state review is the consequence of state evidentiary error.

**1. State law does not bar this Court's review of a constitutional claim.**

To prevail on collateral attack, Petitioner must show that the court of appeals' decision was either contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). In general, when the judgment of a state court rests on a state procedural rule, a federal court will not review a question of federal law so long as the state court grounds are adequate and independent of the federal law question. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Whether a state procedural rule is adequate to preclude federal review "is itself a federal question" to be reviewed de novo. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965). To bar federal review, the state procedural rule must be firmly established and regularly followed. *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991). If the state procedural grounds are novel or inconsistently applied, the constitutional claims will not evade federal review. *See id.*

Under the California contemporaneous objection rule, § 353 of California's Evidence Code,[2] evidence is admissible unless a specific objection is made at the time the evidence is introduced. *Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002). The specific ground of the objection must be made clear to preserve a claim for appellate review. Cal. Evid. Code § 353; *see also Davis v. Woodford* , 384 F.3d 628, 654 (9th Cir. 2004) (holding that Sixth Amendment confrontation claim was procedurally barred where first presented on appeal and trial court objection was on evidentiary grounds), *Melendez v. Pliler*, 288 F.3d 1120, 1124–45 (9th Cir. 2002).

Petitioner points to *People v. Partida*, decided shortly after his appeal, and claims that because the constitutional violation was the result of state evidentiary error, the California contemporaneous objection rule does not apply. *See People v. Partida*, 37 Cal. 4th 428, 122 P.3d 765 (2005). In *Partida*, the California Supreme Court recognized a narrow exception to the rule that the "defendant's failure to make a

---

[2] § 353 provides:

A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; and (b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice.

timely and specific objection on the ground asserted on appeal makes that ground not cognizable." *Id.* at 434 (citing *People v. Green*, 27 Cal. 3d 1, 609 P.2d 468 (1980).  The Court reiterated that a defendant "may not argue on appeal that due process required exclusion of the evidence for reasons other than those articulated in his [evidentiary argument made at trial]."  The *Partida* court, however, allowed the defendant to make a very narrow due process argument on appeal: the defendant may argue that the evidentiary error—if timely objected to at trial—had "the additional legal consequence of violating due process."  *Partida*, 27 Cal. 4th at 435, 122 P.3d 765.

The California Court of Appeal held that Petitioner's Sixth Amendment claim was barred because he failed to object on constitutional grounds, and thus the contemporaneous objection rule barred his claim. Two months later, the California Supreme Court held that the contemporaneous objection rule does *not* bar such claims when the appellant argues that overruling the objection had the *additional legal consequence* of denying due process of law. *Partida*, 27 Cal. 4th at 435, 122 P.3d 765.  And "while a state court's exposition of state law is entitled to great deference,"  California's apparent change of course in *Partida*  "does not support the conclusion that California law applicable to the circumstances presented here is so 'clear, consistently applied, and well-established' as to erect a procedural bar"  precluding federal review of constitutional claims.  *Melendez*, 288 F.3d at 1126.  Therefore, Petitioner's claim will be considered on the merits.

**2. The decision of the California Court of Appeal was not contrary to clearly established federal law.**

Petitioner asserts that his Sixth Amendment right present a meaningful defense was denied when the prosecution's objections to his cross-examination were sustained, and that the trial court's instructions to ignore all testimony regarding Petitioner's failure to provide alibis to Detective Buck could not cure the error.

Erroneously excluding important corroborative evidence can rise to a violation of the Sixth Amendment's right to present a defense. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) The Ninth Circuit applies a five-part balancing test in habeas cases to determine "whether the exclusion of evidence in the trial court violated petitioner's due process rights, weighing the importance of the evidence against the state's interest in exclusion." *Chia v. Cambra*, 360 F.3d 997, 1003 (9th Cir. 2004). These factors include:

(1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense.

*Id.* (citing *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985)).

These five factors, as applied to this case, suggest that the state's interest in excluding the evidence was more important than Petitioner's interest in admission. The first factor requires considering the probative value of the excluded evidence on the central issue of Petitioner's guilt or innocence. The excluded evidence—that Detective Buck lied to Petitioner, and thus Petitioner was surprised and could not muster a sophisticated exculpatory explanation—was not very probative on whether Petitioner was guilty, particularly in light of Petitioner's response on cross-examination that he failed to give this explanation because he was not specifically asked about it. The second factor—the reliability of the statement—also does not favor the Petitioner because the statement was exculpatory. Self-exculpatory statements made by criminal defendants lack indicia of reliability because they serve the defendant's own interests. *See Arredondo v. Ortiz*, 365 F.3d 778, 785–86 (9th Cir. 2004). The third factor considers whether the trier of fact could evaluate the excluded evidence. The trial court concluded that the trier of fact could not evaluate the excluded evidence and would likely be confused as to whether DNA evidence existed. Thus, the third factor weighs in favor of the state. The fourth and fifth factors also cut against Petitioner. Petitioner denied his guilt on direct examination, and thus the full context of his extrajudicial statement was merely cumulative, and it also did not constitute a major part of the defense.

Overall, these five factors suggest that the state's interest in excluding the evidence was far more weighty than the importance of the evidence to Petitioner's case, and thus there was no violation of Petitioner's due process rights. The state appellate court's decision affirming the trial court was not objectively unreasonable.

In any event, the testimony related to the interrogation was excluded and thus Petitioner was not prejudiced. *See Richardson v. Marsh*, 481 U.S. 206 (1987) (referencing "the almost invariable assumption" that jurors follow instructions). The decision of the California Court of Appeal affirming the trial court was not contrary to clearly established federal law.

**B. Second claim- the child-witness's release from proceedings.**

Before trial, the prosecution moved in limine to admit the statements the victim, K.C., made to

Officer Peterson and Officer Walker. The trial court ruled the statements were admissible under California Evidence Code § 1360, which provides a hearsay exception for statements "made by the [minor] victim when under the age of 12 describing any act of child abuse . . . ."

K.C. testified at trial, but was not questioned about his out-of-court statements. After testifying, K.C. was excused and neither the defense nor prosecution requested that K.C. remain subject to subsequent recall. Later in the trial, Officer Peterson and Officer Walker testified, and K.C.'s statements were introduced.

Petitioner contends that his Sixth Amendment right to confront adverse witnesses was denied when the prosecution introduced the victim's statements after he had been excused. The California Court of Appeal held that there was no Confrontation Clause violation because Petitioner knew the prosecution intended to introduce the statement, the declarant testified and was subject to cross examination, and the defense chose not to question the victim about his statements.  The Court of Appeal's decision may be disturbed only if clearly established federal law establishes that there was a Confrontation Clause violation.

The Confrontation Clause requires that testimonial hearsay of witnesses that have become unavailable may be admitted when the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).  And when "the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n.9. Here, the defense had adequate opportunity to cross-examine K.C. at trial, and failed to request he be excused subject to future recall, even though the defense knew the prosecution intended to introduce K.C.'s statements. The state appellate court decided that the Confrontation Clause was not implicated on these facts because K.C. testified at trial and was subject to cross-examination. This decision was not contrary to clearly established federal law.

**C. Third Claim- Allowing an allegedly incompetent witness to testify**

Petitioner asserts he was denied his Sixth Amendment right to confront adverse witnesses when the trial court permitted a five-year-old witness, who Petitioner alleges was incompetent, to testify. The child, A.G., had reported that Petitioner had exposed himself and requested she orally copulate him. The trial court permitted A.G. to testify under California Evidence Code § 1108, which allows propensity evidence of prior sexual crimes in a criminal trial if the defendant is accused of committing a sexual crime. A.G.'s competency was evaluated in a hearing held outside the presence of the jury. Petitioner claims A.G.'s testimony at the hearing and before the jury revealed that A.G. could not understand her duty to tell the truth as a witness, and was thus unavailable for confrontation in violation of the Sixth Amendment. The California Court of Appeal described the hearing as follows:

> During that hearing, A.G. answered basic questions about how she got to the courthouse and the name of her school and teacher. When questioned about her understanding of truth, A.G. was able to distinguish between telling the truth and lying. However, in response to questions about whether anything occurred between her and defendant in a car, A.G. replied she "forgot" everything. The district attorney was able to elicit, through leading questions, that A.G. rode in a car with defendant to the gas station. Through most of the questioning, A.G. responded, "That's the only thing I remember" or "I forgot." A.G. said she told the truth when she was questioned at school and when she was questioned by the district attorney on a prior occasion.

> On cross-examination during the Evidence Code section 402 hearing, A.G. did not recall what she had told either the district attorney or a woman named Kim at her school. Further, A.G. said she did not remember anything other than going to the gas station with defendant. On redirect examination, A.G. recalled talking to a policewoman, but could not recall what she said to the policewoman.

> The trial court found A.G. was able to understand the duty to tell the truth and to communicate and permitted her to testify. During her trial testimony, A.G. stated she traveled with defendant, alone, to the gas station. During their trip, defendant touched himself, below his tummy, and said "bad words" to A.G. A.G. refused to repeat what defendant told her because she believed if she said bad words she would choke. A.G. testified she recalled speaking to the police officer, and she told the police officer that defendant touched himself after unzipping his pants and exposing his "closet." A.G. further testified defendant "kind of just a little bit wanted" her to put her mouth on that part of his body. A .G. also testified she smelled something "funny" or "icky" in defendant's zipper. On cross-examination, A.G. testified defendant's pants were zipped a little bit and she could see a little bit of his underwear.

A.G. later testified before the jury and was cross-examined by defense counsel. Petitioner's claim that A.G.'s testifying violated his Sixth Amendment rights is without merit.

The Confrontation Clause of the Sixth Amendment secures the right to cross-examination; it provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. XI. "That right, incorporated in the Fourteenth Amendment and therefore available in state

proceedings, includes the right to conduct reasonable cross-examination." *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (internal citations omitted).  The Supreme Court has held that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 574 U.S. 673 (1986) (quoting *Davis v. Alaska*, 415 U.S. 302, 318 (1974)).

        Here, there was no violation of Petitioner's Sixth Amendment rights. A.G. was present at trial and was cross-examined. Whether A.G.'s memory was infirm, her story inconsistent, or her demeanor not reflective of the import of the occasion did not make her "unavailable" within the meaning of the Sixth Amendment. Such characteristics could have been exposed in the crucible of cross-examination and the jury would have been free to weigh her testimony accordingly. If the defense failed to persuade the jury that A.G. was not credible, that failure does not constitute a violation of Petitioner's rights. The California Court of Appeal's holding that admission of A.G.'s testimony was proper was not contrary to clearly established federal law.

**D. Fourth Claim- Jury Instruction**

        Petitioner claims that standard jury instruction No. 2.50.01 of the California Jury Instructions—Criminal (CALJIC) is unconstitutional. The jurors were instructed in accordance with CALJIC 2.50.01, which provides in relevant part:

> If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused. However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.

The jurors were further instructed as follows, in accordance with CALJIC 2.50.1:

> If you find the other sexual offense was committed by a preponderance of the evidence, you are nevertheless cautioned and reminded that before a defendant can be found guilty of any crime charged in this trial, the evidence as a whole must persuade you beyond a reasonable doubt that the defendant is guilty of that crime.

Petitioner argues that the instruction on prior sexual offenses, which invoked the preponderance of the evidence standard, is "substantially likely to be understood in an unconstitutional manner . . . raising a reasonable doubt that the jurors convicted Petitioner on less evidence than that required by the Fourteenth Amendment."

The Fourteenth Amendment's Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship* 397 U.S. 358, 364 (1970).  In *Gibson v. Ortiz*, the Ninth Circuit held that jury instructions involving an earlier version of CALJIC 2.50.01 and 2.50.1 violated the Fourteenth Amendment because the two instructions, taken together, permitted the jury to make an inference of guilt of the *crime charged* based solely upon finding, by a preponderance of the evidence, that the defendant committed a prior offense. 387 F.3d 812, 823 (9th Cir. 2004).

However, unlike in the present case, *Gibson* was decided based upon the 1996 version of CALJIC 2.50.01. This instruction provided in pertinent part:

> If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type [*sic*] sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused.
>
> Unless you are otherwise instructed, you must not consider this evidence for any other purpose.

*Id.* at 817.  The revised instruction, presented in Petitioner's case, added the following language:

> However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.

The *Gibson* court had found that the interplay between CALJIC 2.50.01 and 2.50.1 permitted jurors to convict a defendant on the charged crime based on a preponderance-level finding of guilt on an uncharged crime. The language added in the revision, however, admonishes jurors that finding the defendant guilty of an uncharged crime by a preponderance of the evidence is not, in itself, sufficient to prove beyond a reasonable doubt the defendant committed the charged crime. The added language is thus curative, and the instruction does not run afoul of the standard articulated in *Winship*. The instructions, taken alone or in tandem, are clear that beyond a reasonable doubt is the standard of proof jurors must apply to the

charged crime. They therefore comport with the Fourteenth Amendment's Due Process Clause, and the California Court of Appeal's decision was thus not contrary to clearly established federal law.

**E. Fifth Claim- Sentencing**

Petitioner claims he was denied his Sixth Amendment right to trial by jury when he was sentenced to an upper term without a jury finding.  The California Court of Appeal dismissed Petitioner's constitutional arguments in one sentence, succinctly noting that his constitutional arguments had at that time been rejected by the California Supreme Court in *People v. Black* (*Black I*), 35 Cal. 4th 1238 (2005).

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). At the time of Petitioner's sentencing, California's Determinate Sentencing Law (DSL) assigned to the trial judge—not the jury—the authority to find facts by a preponderance of the evidence which would expose a convicted defendant to an upper term sentence, *i.e.*, one above the middle term that a defendant could be sentenced to based upon the jury's verdict alone. In 2007, the Supreme Court held in *Cunningham v. California* that California's DSL scheme, granting judges the sole authority to find facts permitting an upper term sentence to be imposed, violates the Sixth Amendment. 549 U.S. 270, 294 (2007).  *Cunningham* abrogated the California Supreme Court's 2005 decision in *Black I*, which upheld the DSL.

Because in rejecting Petitioner's Sixth Amendment claim, the California Court of Appeal relied entirely upon the California Supreme Court's decision in *Black*, the rule it applied was contrary to clearly established federal law. *See Butler v. Curry*, 528 F.3d 624 (9th Cir. 2008) (holding that rule applied in *Black* was contrary to clearly established law of the Supreme Court).

Although the *rule of decision* of the California Court of Appeal applied was contrary to clearly established law, to grant the writ Petitioner must have had his constitutional rights violated—in other words, the decision affirming Petitioner's conviction must have been contrary to clearly established federal law.

Following remand from the Supreme Court of the United States, the California Supreme Court considered its decision in *Black I* in light of *Cunningham*. *See People v. Black* (*Black II*), 41 Cal. 4th 799, 161 P.3d 1130 (2007). The California Supreme Court upheld Black's sentence, holding that the presence of even one aggravating circumstance would allow the trial court to impose an upper term sentence. *Butler*, 528 F.3d at 642 (citing *Black II*, 41 Cal. 4th at 815, 161 P.3d 1130). Because one of the aggravating factors in Black's case was the existence of a prior conviction, the California Supreme Court concluded that Black's sentence was constitutionally permissible. *Black II*, 41 Cal. 4th at 816, 161 P.3d 1130.

This Court is bound by California's interpretation of its sentencing structure in *Black II*. *See Butler*, 528 F.3d at 642 (noting that subject to exceptions not at issue, "[w]e are bound to accept a state court's interpretation of state law"). Respondent notes that Petitioner had multiple prior convictions, which made the upper term sentence legally available. Although the general rule is that factors increasing punishment must be submitted to a jury, the Supreme Court has carved out an exception when the factor is the existence of a prior conviction. *See Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998); *Apprendi*, 530 U.S. at 490.

Because the trial court relied on at least one permissible factor—Petitioner's prior convictions—in imposing the upper term on Petitioner's sentence, the California Court of Appeal's decision rejecting this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Butler v. Curry*, 528 F.3d at 643.

### III. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The Court declines to issue a certificate of appealability because Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Dated this 27th day of May, 2010.


    /s/ Ronald B. Leighton
RONALD B. LEIGHTON
United States District Court Judge